

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GARY WAYNE SCOTT, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:10-CV-609-TH |
| | § | JURY |
| LIBERTY COUNTY, TEXAS, | § | |
| LIBERTY SHERIFF'S OFFICE, | § | |
| COMMUNITY EDUCATION CENTERS, INC., | § | |
| JUAN A. ALFARO, and CHRIS UNGLES, | § | |
| *Defendants.* | § | |

# MEMORANDUM OPINION SUPPORTING RULE 12 DISMISSAL

Before the Court is *Defendant's Motion to Dismiss for Failure to State a Claim* [Clerk's Docket No. 2] filed by Community Education Centers, Inc. and *Defendants, Liberty County, Texas, Liberty County, Texas, Erroneously Identified as Liberty Sheriff Office, Deputy Juan A. Alfaro and Deputy Chris Ungles [sic]12(b)(6) Motion to Dismiss* [Clerk's Docket No. 3]. The Court granted the unopposed[1] motions by order [Clerk's Docket No. 22] dated September 30, 2011 and now enters this memorandum opinion.

---

[1] "In the event a party fails to oppose a motion in the manner prescribed [by the rules], the court will assume that the party has no opposition." LOCAL RULE CV-7(d). The Plaintiff failed to respond to the motions within the deadlines contemplated by the rules and modified by court order. The motions went unanswered for over eleven (11) months. By *Notice* [Clerk's Docket No. 16] dated February 18, 2011, the Court reminded counsel for plaintiff that she had been afforded two extensions of the deadline to respond, both of which passed. In that notice this Court advised counsel that the motions to dismiss were ripe for consideration and would be construed as unopposed by Plaintiff unless responses were received forthright, thereby in effect affording Plaintiff a third extension to respond. Although counsel for Plaintiff subsequently filed a motion [Clerk's Docket No. 17] seeking a fourth extension of the deadline to respond, no response to the motions was ever filed of record.

# I. FACTUAL & PROCEDURAL BACKGROUND

This is a civil rights case arising out of the arrest and detention of a wrongly identified individual.

Because this case is before the Court on motions by the Defendants seeking dismissal for failure to state a claim, the Court relies upon the recitation of facts contained in the *Plaintiff's First Amended Petition,* which was attached to the *Notice of Removal* [Clerk's Docket No. 1] as Exhibit 4.

Plaintiff Gary Wayne Scott was arrested at his residence shortly after midnight on August 24, 2008 by Liberty County Sheriff Deputies Juan Alfaro and Chris Ungles. *See Plaintiff's First Amended Petition* ¶ 19. The arrest was pursuant to a capias order issued by the 263rd Judicial District Court of Liberty County, Texas on August 18, 2008 directing the arrest of Gary Wayne Scott. *Id.* at Ex. E, F. The deputies advised Scott that a motion to revoke his probation on felony drug charges had been filed. *Plaintiff's First Amended Petition* ¶ 19. Plaintiff responded that there had been a mistake because he had never been convicted of any drug charges and was not on probation. *Id.* Plaintiff's repeated pleas for the deputies to verify the existence of a warrant for his arrest went unanswered. *Id.* at ¶ 20. Although Scott provided his driver's license and social security number to the deputies, they allegedly refused to cross reference this information or otherwise confirm they were arresting the correct individual. *Id.* After being allowed to change clothes, Scott was handcuffed and transported by patrol car to the Liberty County Jail. *Id.* at ¶ 21.

The operations of the Liberty County Jail are managed by defendant Community Education Centers. *Id.* at ¶¶ 4, 9. CEC is a private corporation under contract with Liberty County to handle county jail operations for a negotiated per diem rate based upon the jail census. *Id.* Plaintiff avers that

county jail operations are functions traditionally considered an exclusive government function.

Upon arrival at the jail, Plaintiff Scott was not allowed to make a telephone call, was ignored, and when not ignored, was treated "very rudely." *Id.* at ¶¶ 23, 25. His requests to utilize bathroom facilities were denied, and he was left with no choice but to relieve himself on the floor of his holding cell. *Id.* at ¶¶ 24, 39, 42. He was subjected to retaliatory, intimidating and threatening treatment by trustees. *Id.* at ¶ 39.

According to Plaintiff, the Gary Scott for whom he had been mistaken was already in the custody of Liberty County, having been arrested for evading arrest (11) days prior. *Id.* at ¶ 22, Ex. D. The Plaintiff contends that Alfaro and Ungles knew they arrested the wrong individual because they served the other Gary Scott at 2:00 a.m. in his cell, just hours after arresting Plaintiff Scott. *Id.* at ¶ 26. Even so, Plaintiff Scott continued to be held for several more hours. *Id.* Plaintiff Scott was permitted to make a telephone call at 8:00 a.m., and within the next hour he was released from the Liberty County Jail. *Id.*

Plaintiff maintains this was not a case of innocent misidentification. *Id.* at ¶¶ 28-29. He points to the differences in the men's respective addresses, dates of birth, driver's license and social security numbers, and physical appearance: Plaintiff Scott was a 57-year-old Caucasian on the day in question; the other Gary Scott was 30-year-old African-American. *Id.*

Plaintiff alleges that the deputies acted intentionally in arresting and detaining him with no legal basis. *Id.* at ¶ 29. Plaintiff contends Alfaro was romantically interested in a female with whom Plaintiff

Scott socialized. Plaintiff opines that the deputies sought to disparage his character and reputation by arresting him "thereby opening an avenue for the lady to say yes to Officer Alfaro's advances." *Id.* Plaintiff submits that Alfaro and his colleagues further harassed, humiliated and embarrassed him subsequent to the day in question by following and observing him at the local fair and rodeo. *Id.* at ¶ 53.

On August 24, 2010, Plaintiff Scott filed suit pursuant to 42 U.S.C. Section 1983 in state court alleging violations of federal rights protected by the U.S. Constitution. *Id.* at ¶¶ 33, 38, 44. His *Original Petition* named Liberty County, Liberty County Sheriff's Office and Community Education Centers (CEC) as Defendants. Plaintiff amended his state court petition approximately two weeks later on September 7, 2010 to name Liberty County Sheriff's Deputies Juan Alfaro and Deputy Chris Ungles in their individual capacities as additional Defendants. *Id.* at ¶¶ 1-6; 12.

After removing the case to federal court on the basis of federal question jurisdiction, the Defendants moved to dismiss the complaint in its entirety.

## II. LEGAL STANDARD – 12(b)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of all or part of a complaint "for failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim tests the legal sufficiency of the plaintiff's claim for relief.

To avoid dismissal for failure to state a claim, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129

S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007);[2] *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "Determining whether a complaint states a plausible claim for relief is a context specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The complaint must contain enough facts to give the defendant fair notice of the grounds upon which the claim rests. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

Plaintiff's obligation to "provide the ground of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986) (internal quotations omitted)). "Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955). Nor is the Court at the 12(b)(6) stage bound to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965; *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. It is only incumbent on the Court to

---

[2] Observing that the "no set of facts" pleading standard "has been questioned, criticized, and explained away long enough," the *Twombly* court officially rejected reliance on *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957), as a statement of the minimum pleading standard in federal court. 550 U.S. at 563; 127 S. Ct. at 1969 "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.*

assume the veracity of "well-pleaded factual allegations" and then "determine whether those allegations plausibly give rise to an entitlement to relief." *Id.*

### III. ANALYSIS

A. **Plaintiff Failed to State a Claim Pursuant to 42 U.S.C. § 1983[3]**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). To state a claim under Section 1983, a plaintiff must allege facts showing that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L.Ed.2d 185 (1978); *Cornish v. Corr. Servs. Corp.,* 402 F.3d 545, 549 (5th Cir. 2005).

A municipality can be held liable for constitutional violations under Section 1983. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166-67 (5th Cir. 2010). Municipal liability attaches where deliberate action attributable to the municipality is the direct cause of the deprivation of a federally protected right. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Even so, a local government entity may not be subjected to liability merely for employing a tortfeasor. *Id.* at 391-

---

[3] In addition to its application to the claims alleged against defendant Liberty County, this analysis applies with equal force to the claims brought against CEC, the private corporation retained by Liberty County to operate the jail. "The standards applicable to determining liability under Section 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *See Olivas v. Corrections Corp. of Am.*, 408 F. Supp. 2d 251, 254-55 (N.D. Tex. 2006).

92, 109 S.Ct. 1197. Put another way, a municipality may not be held liable under the theory of *respondeat superior*. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

For this reason, a plaintiff seeking to impose liability on a municipality must identify a municipal "policy" or "custom" that caused the plaintiff to be deprived of a federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. at 403, 117 S.Ct. at 1388; *Zarnow v. City of Wichita Falls*, 614 F.3d at 168. The Fifth Circuit has identified two forms that municipal policy or custom may take. First, a plaintiff may point to a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Zarnow v. City of Wichita Falls,* 614 F.3d at 168; *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984). In the alternative, the plaintiff may demonstrate a "persistent widespread practice of municipal officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

### 1. Plaintiff Failed to Identify Municipal Policy or Custom

As an initial matter, the plaintiff must identify "each and any policy which allegedly caused constitutional violations." *Piotrowski v. City of Houston*, 237 F.3d 567, 579-80 (5th Cir. 2001). Fifth Circuit case law is clear that the policy or custom must be adequately described and factually supported. *Spiller v. City of Tex. City*, 130 F.3d 163, 167 (5th Cir. 1997). Sweeping statements to the effect that constitutional deprivations "were effected pursuant to [municipal] policy, practice and/or custom" will

not suffice. *See McClure v. Biesenbach*, 355 Fed. Appx. 800, 2009 WL 4666485 *3 (5th Cir. Dec. 9, 2009). Such a generalized allegation is essentially "a formulaic recitation of the elements of a cause of action, or a legal conclusion couched as a factual allegation, which fails to state allegations raising the right to relief above the level of speculation." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. Further, allegations to the effect that the municipal actor's actions "represent[ed] the official policy of Defendant . . . failed to describe with specificity any policy whatsoever," and warranted dismissal for failure to state a claim. *Douglas v. Town of Little Elm, Tex.*, No. 4:09CV266, 2010 WL 2307094 at *3 (E.D. Tex. May 7, 2010).

Further complicating the task before the Court is that the plaintiff refers to the defendants collectively and does not tie any custom or pattern to the allegedly responsible municipal defendant. This in and of itself reflects the conclusory nature of his pleadings. Liberty County, Liberty County Sheriff's Office and the CEC are three distinct entities, and yet Plaintiff's allegations group them together as if they operate under the same unwritten customs and practices. Failure to adequately connect defendants to the policy for which liability is sought supports dismissal for failure to state a claim under 12(b)(6). *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)(upheld dismissal of vague allegations referencing "one or more defendants").

The petition is replete with allegations referencing municipal customs and or policies that are not entitled to the assumption of truth because they are no more than conclusory allegations of law, inferences unsupported by facts, or formulaic recitations of the elements:

> "[T]he injuries [Plaintiff Scott] suffered were a direct result of an unlawful custom and practice maintained by Defendants which permitted or condoned unlawful searches and seizures." *Plaintiff's First Amended Petition* at ¶ 7[Clerk's Docket No. 1, Ex. 4].

"Liberty County, the Liberty County Sheriff's Office, and Community Education Center, Inc., had a policy and or a custom in place that enabled its deputies, jailers, agents, and employees to act with deliberate indifference to the constitutional rights of individuals. Specifically, they had a policy or custom in place that tolerated misconduct by its officers, deputies and jailers, and encouraging misconduct by failing to adequately supervise, discipline, or train." *Id.* at ¶ 36.

"The Defendants further had a policy of not timely carrying out and/or executing Judicial Orders relating to service of process and executions of various types of warrants and then promptly entering the date and time that the execution of the Orders were perfected in the County computer." *Id.*

"The Defendants further had a policy of not timely and promptly returning the executed documents back to the District Clerks [sic] Office for filing." *Id.*

"The Defendants further had a policy or custom of not setting forth procedures that are to be implemented when an arrested person and/or a person placed in detention professes that they are not the right person and the Defendants have made a mistake." *Id.*

"The Defendants had a policy or custom in place of having no procedures in place to investigate a person's claim of false arrest or false detention." *Id.* at ¶ 42.

"The Liberty County Sheriff's Office and the Liberty County Jail [sic] customs and policies were to have no procedures in place to investigate a detainee's claim that he was not the subject sought in a warrant." *Id.* at ¶ 46.

"Defendants maintained unwritten customs and practices which permitted or condoned the unlawful searches of persons, the unlawful searches of homes, the unlawful seizures of persons, taking retaliatory action against citizens who exercise their constitutional rights and failing to take swift corrective measures once it is learned that a mistake was made in a person's unlawful arrest and/or detention." *Id.* at ¶ 50.

"These customs an practices are demonstrated also by complaints from citizens alleging such police misconduct and by their failure to take remedial action where misconduct has occurred. These customs and practices are further demonstrated by Defendants' practice of promoting officers who were the subject of allegations of unconstitutional conduct. *Id.* at ¶ 51.

### 2. Insufficient Allegations of Duration and Frequency of Putative Custom or Practice

As no officially adopted or promulgated municipal policy has been identified, the Court assumes

that Plaintiff intended to proceed under a customs or practices theory of municipal liability. Where actions of municipal employees are to be used to prove a custom for which the municipality is liable, "those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of the municipality. *Webster v. City of Houston*, 735 F.2d at 842.

In order to sufficiently plead the existence of a custom or practice, the plaintiff must allege that the municipal actors have engaged in a pattern of unconstitutional conduct for a length of time or with such a degree of frequency that the governing body is both aware of and accepts the course of conduct. *Zarnow v. City of Wichita Falls,* 614 F.3d at 169 (citing *Webster v. City of Houston,* 735 F.2d at 842). Here, the Plaintiff has merely alleged in a conclusory fashion that: "this is the third time the wrong person has been wrongfully identified and jailed." *Id.* at ¶¶ 36, 51. Although Plaintiff does vaguely allege that two other arrests "of this type" have "occurred within the Liberty County Sheriff's Office and Jail," he does not provide the names of these other individuals, when these alleged events took place, the names of the arresting officer or any factual circumstances surrounding the incidents. By failing to plead any facts supporting the duration or frequency of a custom or practice, the petition fails to adequately allege that a custom or practice even exists.

Even accepting Plaintiff's account as true, his singular experience cannot form the basis of a municipal liability claim for a custom or practice. "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Plaintiff has failed to allege the existence of a custom or practice so common and well settled as to constitute policy attributable to

Defendants.

### 3. Fatal Pleading Defects With Respect to Allegation of a Policy of Failure to Train/Supervise/Discipline

Liability under Section 1983 can be predicated upon a municipality's inadequate hiring, training, supervision, discipline or procedures. *See Zarnow c. City of Wichita Falls,* 614 F.3d at 170-71 (quoting *World Wide Street Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 756 (5th Cir. 2009)). To prevail on such a theory, the plaintiff must demonstrate: (1) that the municipality's hiring/training/supervision/discipline procedure(s) were inadequate; (2) that the municipality was deliberately indifferent in adopting its training policy; and (3) that the inadequate training policy directly caused the constitutional deprivations in question. *Id.*

#### a. Failure to Identify Inadequate Training or Supervision

In order for liability to attach based on such a claim, the plaintiff "must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). A plaintiff must show more than that the incident could have been avoided with better or more training, because such a claim could be made about almost any encounter. *Id.* Nor does a mistake by a law enforcement officer establish the inadequacy of a municipal training program. In identifying the inadequacy, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

Plaintiff has alleged no facts, direct or circumstantial, indicating that the Defendants' training , hiring or supervision procedures were constitutionally inadequate, that they did not comply with state-mandated training, or that the Defendants failed to supervise their employees.

### b. Failure to Allege Deliberate Indifference

Plaintiff has failed to allege that the Defendants were deliberately indifferent in adopting or failing to adopt a particular training policy or that Defendants supervised its employees in a manner that shows deliberate indifference to the constitutional rights of citizens. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)(quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. at 410, 117 S.Ct. at 137 (internal citations omitted). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009)(internal quotation omitted). "Deliberate indifference is more than mere negligence or even gross negligence." *Brown v. Callahan*, 623 F.3d at 255. "To establish deliberate indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation." *Id.* (quoting *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal quotations omitted)).

Plaintiff failed to allege that Defendants acted with deliberate indifference, that is, that any Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that any Defendant drew such inference. As such, Plaintiff's complaint is fatally defective.

4. <u>Failure to Plead Constitutional Violation Giving Rise to Section 1983 Liability</u>

To state a claim under Section 1983, a plaintiff must allege facts showing that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. As the Supreme Court has observed:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released.
>
>                *      *      *
>
> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law."
>
>                *      *      *
>
> [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

*Baker v. McCollan*, 443 U.S. 137, 145-146, 99 S.Ct. 2689, 2695 (1979).

B. **<u>Liberty County Sheriff's Office Not a Proper Defendant</u>**

Defendant Liberty County seeks dismissal of the claims alleged against Liberty Sheriff's Office on the grounds that it is not a jural entity capable of being sued. The capacity of an entity to sue or be sued is determined "by the law of the state where the court is located." FED. R. CIV. P. 17(b). Although counties in Texas are "corporate and political" bodies susceptible to suit, sheriff departments typically are not because they exist as departmental subdivisions of the county. TEX. LOCAL GOV'T CODE § 71.001; *see also Alcala v. Dallas County Sheriff*, 988 F.2d 1210 (5th Cir. 1993)(affirming without opinion trial court's conclusion that county sheriff's office could not be sued under Title VII because under Texas law it is not a separate legal entity capable of being sued). In order for a Plaintiff to properly sue

a county department such as a sheriff's department, the political entity that created the department must take "explicit steps to grant the servient agency with jural authority." *Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313-14 (5th Cir. 1991)(stating that Texas county sheriffs and city police departments are not legal entities capable of being sued unless the true political entity takes express steps to grant agency jural authority). Liberty County has not given the Sheriff's Office jural authority, and as such, it lacks the capacity to sue or be sued. The Court therefore dismisses all claims alleged against Liberty Sheriff's Office.

### C. Claims Against Deputies in Their Individual Capacities Time-Barred

The limitations period for a claim brought under Section 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *See Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005). There is no dispute that the applicable statute provides that claims must be brought "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003. The incident at issue occurred on August 24, 2008. *See Plaintiff's First Amended Petition, Ex. F.* Texas law requires a claim to be brought no later than the same calendar day two years following the accrual of the cause of action. Plaintiff did not file his *First Amended Petition*—which for the first time named Deputies Alfaro and Ungles as Defendants—until September 7, 2010, a date more than two years after the August 24, 2008 incident. The claims against these individual Defendants are therefore time-barred unless they "relate back" to the original filing of the complaint. FED. R. CIV. P. 15(C). "A complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011); *Jones v. Bock,* 549 U.S. 199, 215, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007). The claims against the individuals Defendants must be dismissed because the amended

petition on its face demonstrates that Plaintiff's claims against the individual defendants are time-barred, he does not raise some basis for tolling, and he does not argue that they relate back to the filing of the original petition. *Young v. Lepone*, 305 F.3d 1, 14 (1st Cir. 2002).

D. <u>**Plaintiff Forfeited Right to Continue Litigating by Failing to Respond**</u>

When a plaintiff fails to respond to a motion to dismiss, the Court has discretion to find that the plaintiff has forfeited the right to continue litigating the claim. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). In finding that the plaintiff defaulted by failing to respond to the defendant's motion to dismiss, the Seventh Circuit Court of Appeals observed that:

> Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.

*Id.* Any post-deadline extension to respond to a dispositive motion must be "upon motion made" and is permissible only where the failure to meet the deadline was the result of "excusable neglect." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 896, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990). Given the clear record of delay and contumacious conduct by plaintiff's counsel in failing respond to the motions to dismiss after being afforded several extensions and notice of the Court's intent to rule, dismissal on the merits is warranted in the case at bar. *See Johnson v. Pettiford*, 442 F.3d 917, 918-919 (5th Cir. 2006).

## IV. CONCLUSION

It is for all these reasons that the Court granted *Defendant's Motion to Dismiss for Failure to State a Claim* [Clerk's Docket No. 2] filed by Community Education Centers, Inc. and *Defendants, Liberty County, Texas, Liberty County, Texas, Erroneously Identified as Liberty Sheriff Office, Deputy Juan A. Alfaro and Deputy*

*Chris Ungles [sic]12(b)(6) Motion to Dismiss* [Clerk's Docket No. 3].

**SIGNED** this the **30** day of **November, 2012.**

_____
Thad Heartfield
United States District Judge